UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EDUARDO HERRERO,

    Plaintiff,

v.                                                     CASE NO. 8:19-cv-1563-T-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Following an administrative hearing[2] held on May 7, 2018, the assigned Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled from March 30, 2016, the alleged disability onset date, through July 17, 2018, the date of the ALJ's decision.[3] (Tr. 22-34, 100-26.)

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 16.)

[2] Plaintiff testified at the hearing with the assistance of a Spanish interpreter. (Tr. 22, 100, 102.)

[3] Plaintiff had to establish disability on or before December 31, 2021, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 22.) The relevant period for SSI is the month in which Plaintiff filed his application (April 2016) through the date of the ALJ's decision (July 17, 2018). (*Id.*)

In reaching the decision, the ALJ found that Plaintiff had the following severe impairments: back disorder, asthma, minor motor seizures, organic brain syndrome, substance abuse disorder, and depression.  (Tr. 24.)  The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work.[4]  (Tr. 26.)  Then, after determining that Plaintiff was unable to perform his past relevant work as an auto mechanic and parts salvager, the ALJ found, at step five of the sequential evaluation process,[5] based on the testimony of the vocational expert ("VE") and considering Plaintiff's age,[6] education,[7] work experience, and RFC, that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, such as a sub-assembler (DOT number 729.684-054, light exertional work, with an SVP

---

[4] Specifically, the ALJ found that Plaintiff could perform light work, except:
> [Plaintiff] can lift 20 pounds occasionally; can lift 10 pounds frequently; can stand or walk approximately 6 hours per 8-hour workday; can sit approximately 6 hours per 8-hour workday with normal breaks; cannot climb ladders, ropes or scaffolds; can occasionally perform all other postural activities, including climbing ramps, climbing stairs, balancing, stooping, kneeling, crawling or crouching; must avoid even moderate exposure to hazards; work is limited to unskilled work such as [an] SVP [i.e., Specific Vocational Preparation of] 1 or 2, simple[,] routine and repetitive tasks; occasional interaction with the public and supervisors; occasional changes in [the] work setting; and [Plaintiff is limited] to jobs requiring only basic English speaking and writing.

(Tr. 26.)

[5] The Commissioner employs a five-step process in determining disability.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[6] Plaintiff was 48 years old on the alleged disability onset date and 50 years old on the date of the ALJ's decision.  (*See* Tr. 32.)

[7] Plaintiff completed high school and then four years of vocational school for mechanical design in Cuba.  (Tr. 32, 105, 655.)

of two), a packing-line worker (DOT number 753.687-038, light exertional work, with an SVP of two), and a cleaner-housekeeping (DOT number 323.687-014, light exertional work, with an SVP of two).  (Tr. 32-33.)

Plaintiff is appealing the Commissioner's decision that he was not disabled from March 30, 2016 through July 17, 2018.  Plaintiff has exhausted his available administrative remedies and the case is properly before the Court.  Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **REVERSED and REMANDED.**

**I.    Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into

account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

### A.   The Parties' Positions

Plaintiff argues two points on appeal: first, that the ALJ erred in failing to find that Plaintiff was unable to communicate and/or was illiterate in English; and second, that the ALJ erred in finding that Plaintiff could perform jobs existing in significant numbers in the national economy. As to the first issue, Plaintiff contends that the ALJ did not explain the basis for the RFC finding that Plaintiff could perform "jobs requiring only basic English speaking and writing." (Tr. 26.) Plaintiff points out that this finding is inconsistent with his testimony that he cannot speak English (Tr. 103); his disability report, which provides that Plaintiff cannot speak English and read or write in English (Tr. 342); and his medical records, which indicate that Plaintiff has been using an interpreter during doctor's appointments (Tr. 51, 54, 83, 682). According to Plaintiff, application of rule 202.09 of the Medical Vocational Guidelines of the Social Security Regulations (the "Grids") would direct a finding of disability since at least January 23, 2018 when Plaintiff became an individual closely approaching advanced age, because he is illiterate or unable to communicate in English, is limited to performing light work, cannot perform his past relevant work, and has no transferable skills to

4

light or sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. As to the second issue, Plaintiff argues that the testimony of the VE cannot constitute substantial evidence to support the ALJ's decision because it was given in response to an incomplete hypothetical question that did not include Plaintiff's illiteracy and inability to communicate in English.[8]

Defendant responds that substantial evidence supports the ALJ's decision. (Doc. 27.) As to Plaintiff's literacy, Defendant states:

> Here, although Spanish is Plaintiff's first language, Plaintiff's testimony and work history indicate at least a basic reading and writing ability that is inconsistent with illiteracy. Plaintiff, for instance, at [the] hearing, when asked, "And you haven't picked up any English?" he testified, "Some of it, a little bit" (Supp. Tr. 754). Furthermore, in response to the VE question, "How did you keep up with the requirements to repair automobiles?" he testified, "I learned because they showed me how to do it. I would repair the motors, the transmissions, starters, alternators, radiators" (Supp. Tr. 778). Plaintiff's ability to read and write well enough to contribute to work projects indicates that he could do more than just sign his name, and that he had the ability to "read or write a simple message." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1). The ALJ accounted for Plaintiff's limited English, both in speech and writing, with a limitation to "only basic English speaking and writing" in the hypothetical question to the VE (Tr. 26, Supp. Tr. 778-81). In addition, the hypothetical question limited Plaintiff to unskilled work, and "the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance." *See* Rule § 201.00(i), App'x 2, subpt. P., Part 4.

---

[8] Although Plaintiff also argued that the transcript of the administrative hearing did not contain testimony by the VE regarding representative jobs that Plaintiff could perform (*see* Doc. 24 at 8), this argument became moot when Defendant filed a supplemental transcript covering the complete administrative hearing (*see* Doc. 26).

5

(*Id.* at 6-7.)  Defendant also states that the ALJ properly assessed Plaintiff's ability to speak English, because:

> The record, including Plaintiff's testimony and reports, reflects he completed a bachelor's degree in mechanical drawing in 1984 in Cuba (Tr. 344).  Notably, although Plaintiff reported he could not speak and understand English or read and understand English (Tr. 342), at [the] hearing, when asked, "And you haven't picked up any English?" he testified, "Some of it, a little bit" (Supp. Tr. 754).  Plaintiff's testimony that he could speak some English was substantial evidence to support the ALJ's decision. . . . Even assuming *arguendo* that the ALJ erred in finding Plaintiff maintained the ability to communicate in English, this error is harmless because the three positions identified by the VE are unskilled jobs that do not require English language proficiency.

(*Id.* at 8.)

With respect to Plaintiff's second argument, Defendant states that the ALJ properly relied on the VE's testimony to find that Plaintiff could perform other work.  (*Id.* at 10.)  Defendant explains that it was not necessary to apply rule 202.09 of the Grids and the ALJ did not use the Grids to direct a finding of no disability, because the ALJ recognized that Plaintiff's non-exertional limitations precluded the strict application of the Grids and that they could be used only as a framework for the decision.  (*Id.*)  Defendant adds that even if the ALJ could have relied on the Grids, Plaintiff failed to show he was illiterate or unable to communicate in English.  (*Id.* at 11.)  According to Defendant, "the Grids consider a Plaintiff's English proficiency as an educational factor, and application of the Grid rule concerning an individual with 'at least high school' education would already encompass Plaintiff's ability to communicate in English," making Grid rule

6

202.09 "inapplicable to this case." (*Id.*) Further, Defendant contends that the hypothetical question to the VE accounted for Plaintiff's limited English by specifying that the hypothetical individual had the same education as Plaintiff and the term "education" encompasses how well a person can communicate in English. (*Id.*) Defendant explains:

> The ALJ expressly found that Plaintiff could communicate in English . . . . Therefore, the ALJ's hypothetical question to the VE, which instructed the VE to assume an individual with the same education as Plaintiff, and a limitation to "jobs requiring only basic English speaking and writing," sufficiently accounted for the fact that Plaintiff was limited in his ability to communicate, read, and write in English . . . .
> Moreover, there is nothing in the DOT that requires the jobs identified be performed in English. . . . Two of the positions identified by the VE have a language level of one, which is the lowest of the six language levels set forth in the *DOT* publication . . . . Indeed, this Court has expressly recognized that nothing in the *DOT* requires that the claimant's language be English. . . . Similarly, in Appendix C of the *DOT*, where the language levels are defined, the ability to speak, read, or write *in English* does not appear until language level 3.

(*Id.* at 12-13.)

### B. Relevant Record Evidence and Administrative Findings

As reflected in the ALJ's decision, Plaintiff testified at the administrative hearing "with the assistance of a Spanish interpreter." (Tr. 22, 102, 752.) At the hearing, the following exchange took place between the ALJ and Plaintiff:

> Q     Sir, can you understand English at all?
> A     No.
> Q     When did you come to the [S]tates?
> A     In '95.
> Q     Okay. So[,] you've been here 20 years?
> A     Yes.

7

> Q     And you haven't picked up any English?
> A     Some of it, a little bit.
> Q     What kind of work have you done?
> A     Mechanics.
> Q     And none of those jobs speak English?  You spoke Spanish in them?
> A     Spanish.
> . . .
> Q     Now what is your highest level of education?
> A     12th grade and then four years more of mechanics.
> Q     And where did you obtain that education?
> A     In Cuba.

(Tr. 103-04, 105.)  Plaintiff was also questioned by his attorney, as follows:

> Q     Can you read and write the English language at all?
> A     No.
> Q     Okay.  Can you read and write Spanish fluently?
> A     Yes.

(Tr. 783.)

The VE testified at the hearing that Plaintiff's work history "was confusing and some of it was in Spanish, some of it was in English." (Tr. 774.)  The hypothetical question to the VE limited Plaintiff to, *inter alia*, "jobs requiring only basic English speaking and writing." (Tr. 779.)  Upon hearing this limitation, the VE sought clarification from the ALJ, as follows:

> A     When you said basic English speaking and writing, can you define basic a little further?
> Q     Uh, I've never had to define basic English.
> A     Can this individual read instructions or basic construction –
> Q     Basic simple English language.  . . .
> . . .
> ALJ:  I can't really do, I mean, only -- I'm trying here.  I've never had to give this one.  Basic English and speak Spanish and --
> VE:   Let me tell you the reason I ask so it can help you define it a little bit.  Like there are industrial jobs[,] like assembly work and that kind of thing.  Some of that stuff can be shown . . . .

8

> BY THE ADMINISTRATIVE LAW JUDGE:
> Q   Like the jobs he's done for 20 -- he's worked at jobs which didn't rely on a ton of English and Spanish --
> A   He said people explained how to do it or they showed him how to do it.  There are jobs that, there are unskilled jobs, assembly jobs, where that may be the case.  But there might be some need for, you know, reading some basic instructions.
> Q   That's what I'm looking for.
> A   And that's what you're looking for.  Okay.
> Q   Yeah, just reading basic English.
> A   Okay.  Following instructions in the work place --

(Tr. 779-80.)

Just like in the hypothetical question, the ALJ's RFC limited Plaintiff to, *inter alia*, "jobs requiring only basic English speaking and writing" and to "unskilled work such as [an] SVP [of] 1 or 2, simple[,] routine and repetitive tasks."  (Tr. 26, 30.)  After finding that Plaintiff was unable to perform his past relevant work as an auto mechanic and parts salvager, the ALJ found that Plaintiff had "at least a high school education and [was] able to communicate in English."  (Tr. 32.)  Then, the ALJ stated: "Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills . . . ."  (*Id.*)  At step five, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  (*Id.*)  The ALJ explained that if Plaintiff had the RFC to perform the full range of light work, "a finding of 'not disabled' would be directed

9

by Medical-Vocational Rule 202.21"; however, because Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ consulted a VE to determine the extent to which these limitations erode the unskilled light occupational base and whether there were jobs existing in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  (Tr. 33.)  The VE testified that given all of these factors, an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of representative occupations, such as a sub-assembler, a packing-line worker, and a cleaner-housekeeping.  (Tr. 33, 781-82.)

### C. Analysis

The Court finds that the ALJ's findings regarding Plaintiff's literacy and ability to communicate in English are not supported by substantial evidence in the record.  The Social Security Regulations direct the Commissioner to ask a claimant how long he attended school and whether he is "able to understand, read, and write, and do at least simple arithmetic calculations."  20 C.F.R. §§ 404.1564(c), 416.964(c).  While the ALJ here asked Plaintiff about his highest level of education and where it was obtained (Tr. 105), the ALJ did not inquire as to Plaintiff's ability to read and write in English.  Instead, the ALJ concluded that Plaintiff was limited to "jobs requiring only basic English speaking and writing."  (Tr. 26, 30.)  However, the ALJ's conclusory finding as to Plaintiff's literacy and ability to communicate in English is not supported by the evidence of record.

10

"Illiteracy means the inability to read or write." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1).  A person is illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his . . . name." 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1).  Here, when questioned by his attorney, Plaintiff testified, with the assistance of an interpreter, that he cannot read and write in the English language at all.  (Tr. 783.)  Further, when questioned by the ALJ, Plaintiff testified that he cannot understand English at all and although he has been in the United States since 1995, he spoke Spanish on the job and was shown how to do his job.  (Tr. 103-04.)  In addition, the record indicates that Plaintiff's disability forms were filled out in Spanish and he regularly utilized the services of an interpreter during his doctor's appointments and/or was accompanied by family members acting as interpreters/historians.  (*See* Tr. 51, 54, 83, 87, 131, 148, 358-75, 430, 441, 448, 485, 487, 502, 557, 572, 636, 649, 658, 682, 717-19, 741; *see also* Tr. 132 (noting that Plaintiff's medical provider was also Spanish speaking).)

The Court notes that the ALJ asked Plaintiff at the hearing whether he has "picked up any English," to which Plaintiff responded, "Some of it, a little bit."  (Tr. 103-04.)  The ALJ did not follow up on Plaintiff's vague and generalized response.  *Cf. Mendoza v. Colvin*, No. 1:15-cv-777-GSA, 2016 WL 6441603, *5 (E.D. Cal. Oct. 27, 2016) ("The ALJ's attempt to determine what Plaintiff meant by 'a little bit,' is not clear since Plaintiff's answer regarding an assessment of his reading level was inaudible.").  Thus, the extent to which Plaintiff can understand,

11

speak, read, and write in English is unclear.

Even assuming that Plaintiff's vague response could support the ALJ's finding of "only basic English speaking and writing," the ALJ failed to resolve the apparent inconsistency in the record as to Plaintiff's literacy and ability to communicate in English.  The record does not seem to support a finding that Plaintiff can "read or write a simple message such as instructions or inventory lists," 20 C.F.R. §§ 404.1564(b)(1), 416.964(b)(1), even though the ALJ asked the VE to assume so (Tr. 780).  *See Pourdehghan v. Colvin*, No. 2:15-cv-07975 (KS), 2016 WL 4534005, *6 (C.D. Cal. Aug. 29, 2016) ("There is no evidence in the record . . . that plaintiff can write simple messages such as instructions or inventory lists, as required under the Commissioner's regulations for a finding of literacy."); *Rodriguez v. Astrue*, No. EDCV 12-0673 RNB, 2013 WL 458176, *2 (C.D. Cal. Feb. 5, 2013) (concurring with plaintiff that "writing messages and coherent instructions requires a greater ability than writing simple words, and that the same is true for reading messages and instructions").  "It may be that Plaintiff is literate as defined by the Grids, or is able to read enough to perform the jobs identified by the VE, but the record is far from clear." *Mendoza*, 2016 WL 6441603 at *6.[9]

---

[9] As stated in *Mendoza*, "[t]he literacy issue is not only relevant to determine the applicability of the Grids, but is also relevant because the jobs identified by the VE require a reading level that may be higher than Plaintiff's capabilities given the evidence currently in the record." 2016 WL 6441603 at *6.  For example, Language Level 1 (as in packing-line worker and cleaner-housekeeping) requires, *inter alia*, reading at the rate of 95-120 words per minute, and Language Level 2 (as in sub-assembler) requires, *inter*

12

The ALJ did not discuss why he determined that Plaintiff was "able to communicate in English" (Tr. 32) and to perform "jobs requiring only basic English speaking and writing" (Tr. 26).  Because "[t]he Commissioner's decision 'must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council,'" the Commissioner's lawyers are precluded "from advancing grounds in support of the agency's decision that were not given by the ALJ."  *Lorenzo v. Comm'r of Soc. Sec.*, No. 6:10-cv-369-Orl-18DAB, 2011 WL 2681986, *7 (M.D. Fla. July 7, 2011).  Thus, the Court cannot accept any post-hoc rationalizations advanced by defense counsel on appeal.  Also, the Court cannot accept Defendant's harmless-error argument, because the ALJ's finding as to Plaintiff's literacy and ability to communicate in English, which is not supported by substantial evidence in the record, "is highly consequential to the ultimate decision of non[-]disability."  *Pourdehghan*, 2016 WL 4534005, at *6.

Therefore, on remand, the ALJ must fully develop the record as to Plaintiff's literacy and ability to communicate in English.  To that effect, the ALJ shall conduct any appropriate assessments and/or receive any additional evidence to determine the extent to which Plaintiff can understand, speak, read,

---

*alia*, passive vocabulary of 5,000-6,000 words and reading at the rate of 190-215 words per minute.  *See* DOT 729.684-054, 1991 WL 679729; DOT 753.687-038, 1991 WL 680354; DOT 323.687-014, 1991 WL 672783.  Although Defendant points out that illiteracy or the ability to communicate in English has the least significance at the unskilled level because the primary work functions in the bulk of unskilled work relate to working with things rather than data or people, the record here was not sufficiently developed to determine the level of Plaintiff's literacy and ability to communicate in English.

and write in English.  *See Lorenzo*, 2011 WL 2681986, at *6 ("A claimant's literacy in Spanish is irrelevant to his ability to find . . . work in America, where English is the dominant tongue.").  Any literacy and/or communication limitations supported by substantial evidence shall either be applied to the Grids or presented to the VE to address their impact on any available jobs.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2. The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3. In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2),* Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on October 8, 2020.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record